UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARIA LOUISE JONES,<br><br>                    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | Case No. 3:13-cv-05852-KLS<br><br>ORDER AFFIRMING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

Plaintiff, appearing *pro se* in this case, seeks judicial review of defendant's denial of her applications for disabled widow's and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On December 9, 2010, plaintiff filed applications for disabled widow's benefits and another one for SSI benefits, alleging in both applications that she became disabled beginning December 10, 2004. See ECF #19, Administrative Record ("AR") 13.[1] Both applications were

---

[1] Plaintiff also filed an application for disability insurance benefits on the same date, alleging as well therein that she became disabled beginning December 10, 2004. See id. But because as noted below plaintiff subsequently amended her alleged onset date of disability to October 5, 2010, and because her date last insured is March 31, 2003, that application was dismissed at the administrative hearing level. See id.; Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) (to be entitled to disability insurance benefits, plaintiff "must establish that her disability existed on or before" date her insured status expired, i.e., her date last insured). Plaintiff does not challenge the validity of that dismissal.

ORDER - 1

denied upon initial administrative review on December 17, 2010, and on reconsideration on September 14, 2011. See AR 13. A hearing was held before an administrative law judge ("ALJ") on August 29, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 34-72. Subsequent to the hearing, plaintiff amended her alleged onset date of disability to October 5, 2010. See AR 13.

In a decision dated October 9, 2012, the ALJ determined plaintiff to be not disabled. See AR 13-27. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 29, 2013, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 404.981, § 416.1481. On September 30, 2013, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3. The administrative record was filed with the Court on January 7, 2014. See ECF #19. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, because the ALJ erred: (1) in failing to find plaintiff had a severe impairment consisting of cervical sprain with facet dysfunction; (2) in assessing plaintiff's residual functional capacity; (3) in finding plaintiff to be capable of returning to her past relevant work; and (4) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, however, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds defendant's decision to deny benefits should be affirmed.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by

ORDER - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

I.      The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

The ALJ in this case found plaintiff's degenerative disc disease of the lumbar spine and right knee tendinitis/osteoarthritis to be severe impairments. See AR 17.  Plaintiff argues the ALJ erred in not also finding she had a severe impairment consisting of a cervical sprain with facet dysfunction based on a diagnosis of the same made by Vatche Cabayan, M.D., in an evaluation

ORDER - 4

report dated August 3, 2005. See ECF #22, pp. 6, 25.  That evaluation report, however, is not part of the administrative record that is before the Court.  Accordingly, the ALJ cannot be faulted for failing to consider it.  Further, the Court agrees with defendant that even if that report should have been made part of the record, it would not have changed the ALJ's ultimate determination of non-disability in this case.

This is because, as defendant points out, Dr. Cabayan offered this diagnosis more than five years prior to plaintiff's amended alleged onset date of disability, and therefore is of little, if any, relevance to the issue of impairment severity in this case. See Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").  In addition, none of the medical evidence in the record pertaining to the relevant time period subsequent to the amended alleged onset date of disability contains a diagnosis of cervical sprain with facet dysfunction, let alone indicates the presence of any work-related functional limitations related thereto.  Even if the ALJ did err in failing to find this to be a severe impairment at step two, furthermore, such error was harmless[3] given that as discussed in greater detail below, he went on to properly evaluate the relevant medical evidence in the record concerning plaintiff's back-related functional limitations during the later steps of the sequential disability evaluation process.[4]

II.     The ALJ's Residual Functional Capacity Assessment

If a disability determination "cannot be made on the basis of medical factors alone at step

---

[3] See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

[4] see also Hubbard v. Astrue, 2010 WL 1041553 *1 (9th Cir. 2010) (because claimant prevailed at step two and ALJ considered claimant's impairments later in sequential analysis, any error in omitting those impairments at step two was harmless) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's error in failing to list bursitis at step two harmless, where ALJ's decision showed any limitations posed thereby was considered later in sequential disability evaluation process); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (any error in failing to consider plaintiff's obesity at step two harmless, because ALJ did not err in evaluating plaintiff's impairments at later steps).

ORDER - 5

three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ found plaintiff had the residual functional capacity:

> **. . . to perform light work . . . in that she is able to occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of 2 hours in an eight hour work day; sit for about 6 hours in an eight hour work day. She is capable of occasionally stooping, kneeling, crouching, crawling, and climbing ramps and stairs, but never climbing ladders, ropes, or scaffolds. She is further capable of work that does not involve operating foot controls; that does not involve greater than occasional exposure to extreme cold, excess wetness, and excess vibration; and that does not involve operational control of moving or hazardous machinery or unprotected heights.**

AR 18 (emphasis in original). Plaintiff argues – again based on Dr. Cabayan's early August 2005 evaluation report and the diagnoses contained therein – that the ALJ erred in assessing her with the above RFC, because it fails to show she has a work-related permanent disability. But as discussed above, given that that report is dated more than five years prior to the amended onset

ORDER - 6

date of disability, plaintiff has failed to establish its relevance as to the nature and extent of her work-related functional capacity during the pertinent time period.  Plaintiff here too, therefore, has failed to demonstrate reversible error on the part of the ALJ.

III.   The ALJ's Step Four Determination

Based on the above residual functional capacity assessment and the testimony of the vocational expert, the ALJ found plaintiff to be capable of performing her past relevant work as a telemarketing surveyor.  See AR 25.  As with her argument concerning the ALJ's assessment of her RFC, plaintiff argues this finding too is in error in light of Dr. Cabayan's evaluation report.  Plaintiff has the burden at step four of the disability evaluation process to show she is unable to return to his or her past relevant work.  Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  She has failed to meet that burden here.  For the same reasons plaintiff's reliance on that report is unavailing in regard to the ALJ's RFC assessment, so too does it fail to provide a valid basis for challenging the ALJ's step four determination.  Plaintiff further argues the opinion evidence in the record from other medical and non-medical sources supports her challenge at step four, but she does not argue – let alone show – that the ALJ erred in rejecting that opinion evidence in the record that conflicts with the residual functional capacity he assessed.[5]  Nor does the Court find any basis for overturning the ALJ's rejection thereof.

IV.   The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do.  See Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d),

---

[5] See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered).

ORDER - 7

(e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids").  Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ.  See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence.  See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity.  See AR 66.  In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform the jobs of injection molding machine tender, house sitter and polystyrene off-bearer, each of which the vocational expert further testified are performed at the light work level.  See AR 67-68.  Based on the testimony of the vocational expert, the ALJ found plaintiff to be capable of performing those jobs at step five as jobs existing in significant numbers in the national economy.  See AR 25-26.  Although plaintiff argues the ALJ erred in relying on the jobs the vocational expert identified because the Dictionary of Occupational Titles ("DOT") does not describe them as being performed at the light work level, the descriptions of

ORDER - 8

those jobs contained in the DOT clearly shows otherwise.[6]

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 9th day of April, 2014.

Karen L. Strombom
United States Magistrate Judge

---

[6] See DOT 556.685-038 (injection molding machine tender), 1991 WL 683482; DOT 309.367-010 (house sitter), 1991 WL 672664; DOT 556.685-062 (polystyrene molding machine tender), 1991 WL 683488.

ORDER - 9